IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

| | |
|---|---|
| KRIS ERIN KIDWELER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 12-05085-CV-REL-SSA |
| ) | |
| CAROLYN COLVIN, Acting Commissioner ) | |
| of Social Security, ) | |
| ) | |
| Defendant. ) | |

**<u>ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT</u>**

Plaintiff Kris Erin Kidweler seeks review of the final decision of the Commissioner of Social Security denying plaintiff's application for disability benefits under Titles II and XVI of the Social Security Act ("the Act"). Plaintiff argues that the Administrative Law Judge (ALJ) (1) erroneously gave greater weight to the opinions of non-examining and non-treating physicians than to the opinions of plaintiff's treating and examining sources; (2) erroneously discounted the consistent opinions of plaintiff's examining and treating physicians; (3) failed to properly weigh the opinion of a nurse; (4) failed to develop the record and obtain consultative examinations; (5) failed to support the residual functional capacity (RFC) determination with medical opinion evidence; (6) failed to include in the RFC all of the opinions of the non-examining and non-treating medical consultants; (7) failed to include all of plaintiff's impairments in the RFC; and (8) failed to prove plaintiff could perform all the jobs identified by the vocational expert. I find that the substantial evidence in the record as a whole supports the ALJ's finding that plaintiff is not disabled. Therefore, plaintiff's motion for summary judgment will be denied and the decision of the Commissioner will be affirmed.

*I.   BACKGROUND*

On March 16, 2010, plaintiff applied for disability benefits alleging that he had been

disabled since February 25, 2009 (Tr. 105-14, 115-121). Plaintiff's disability stems from a combination of physical and mental impairments (Tr. 184). Plaintiff's applications were denied at the initial level on May 13, 2010 (Tr. 61-65). On December 10, 2010, an oral hearing was held before an ALJ (Tr. 26-57). On January 25, 2011, the ALJ found that plaintiff was not disabled as defined in the Act (Tr. 8-25). On June 28, 2012, the Appeals Council denied plaintiff's request for review (Tr. 1-3). Therefore, the decision of the ALJ stands as the final decision of the Commissioner.

## II.     STANDARD FOR JUDICIAL REVIEW

Sections 205(g) and 1631(c)(3) of the Act, 42 U.S.C. §§ 405(g) and 1383(c)(3), respectively, provide for judicial review of a "final decision" of the Commissioner. The standard for judicial review by the federal district court is whether the decision of the Commissioner was supported by substantial evidence. 42 U.S.C. § 405(g); 42 U.S.C. § 1383(c)(3); Richardson v. Perales, 402 U.S. 389, 401 (1971); Mittlestedt v. Apfel, 204 F.3d 847, 850-51 (8th Cir. 2000); Johnson v. Chater, 108 F.3d 178, 179 (8th Cir. 1997); Andler v. Chater, 100 F.3d 1389, 1392 (8th Cir. 1996). The determination of whether the Commissioner's decision is supported by substantial evidence requires review of the entire record, considering the evidence in support of and in opposition to the Commissioner's decision. Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); Thomas v. Sullivan, 876 F.2d 666, 669 (8th Cir. 1989). "The Court must also take into consideration the weight of the evidence in the record and apply a balancing test to evidence which is contradictory." Wilcutts v. Apfel, 143 F.3d 1134, 1136 (8th Cir. 1998) (citing Steadman v. Securities & Exchange Commission, 450 U.S. 91, 99 (1981)).

Substantial evidence means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. at 401; Jernigan v. Sullivan, 948 F.2d 1070, 1073 n. 5 (8th Cir. 1991). However, the

substantial evidence standard presupposes a zone of choice within which the decision makers can go either way, without interference by the courts. "[A]n administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision." Id.; Clarke v. Bowen, 843 F.2d 271, 272-73 (8th Cir. 1988).

## III. BURDEN OF PROOF AND SEQUENTIAL EVALUATION PROCESS

An individual claiming disability benefits has the burden of proving he is unable to return to past relevant work by reason of a medically-determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). If the plaintiff establishes that he is unable to return to past relevant work because of the disability, the burden of persuasion shifts to the Commissioner to establish that there is some other type of substantial gainful activity in the national economy that the plaintiff can perform. Nevland v. Apfel, 204 F.3d 853, 857 (8th Cir. 2000); Brock v. Apfel, 118 F. Supp. 2d 974 (W.D. Mo. 2000).

The Social Security Administration has promulgated detailed regulations setting out a sequential evaluation process to determine whether a claimant is disabled. These regulations are codified at 20 C.F.R. §§ 404.1501, et seq. and 416.901, et seq. The five-step sequential evaluation process used by the Commissioner is outlined in 20 C.F.R. §§ 404.1520 and 416.920 and is summarized as follows:

1. Is the claimant performing substantial gainful activity?

    Yes = not disabled.
    No = go to next step.

2. Does the claimant have a severe impairment or a combination of impairments which significantly limits her ability to do basic work activities?

    No = not disabled.
    Yes = go to next step.

3. Does the impairment meet or equal a listed impairment in Appendix 1?

Yes = disabled.
No = go to next step.

4.  Does the impairment prevent the claimant from doing past relevant work?

    No = not disabled.
    Yes = go to next step where burden shifts to Commissioner.

5.  Does the impairment prevent the claimant from doing any other work?

    Yes = disabled.
    No = not disabled.

## IV.  THE RECORD

The record consists of the testimony of plaintiff and the vocational expert at the December 10, 2010 hearing, in addition to documentary evidence admitted at the hearing.

## A.  ADMINISTRATIVE REPORT

The record includes the following report showing plaintiff's earnings for the years 1981 through 2009:

| Year | Earnings    | Year | Earnings   |
|------|-------------|------|------------|
| 1991 | $ 1,020.00  | 2001 | $ 9,222.31 |
| 1992 | .00         | 2002 | 4,468.94   |
| 1993 | 870.70      | 2003 | 9,814.33   |
| 1994 | 531.70      | 2004 | 10,246.98  |
| 1995 | 1,877.50    | 2005 | 25,598.46  |
| 1996 | 1,910.30    | 2006 | 23,213.28  |
| 1997 | 2,111.31    | 2007 | 11,488.67  |
| 1998 | 6,792.42    | 2008 | 2,102.06   |
| 1999 | 6,462.99    | 2009 | 3,037.54   |
| 2000 | 14,541.98   |      |            |

(Tr. 147-48).

B.     *SUMMARY OF MEDICAL RECORDS*

As summarized by plaintiff and defendant, the medical evidence reveals clinical signs and laboratory findings of several physical and mental impairments.

C.     *SUMMARY OF TESTIMONY*

At the December 10, 2010 hearing, testimony was taken from plaintiff and Stella Doering, a vocational expert.

**1.     Plaintiff's testimony**

Plaintiff testified that he was then 35 years old, 5'11" tall, weighed 264 pounds, and is right-handed (Tr. 29).

When questioned as to why he was unable to work, plaintiff responded that he has a learning disorder. Plaintiff reported that he completed the tenth grade in special classes, where he never took a math class, and that he reads at the third grade level.

Plaintiff said that he has a commercial driver's license (Tr. 30, 33, 39).

In addition to his learning disorder, plaintiff identified his emotional problems as preventing him from working. Plaintiff testified that he has difficulty sleeping, experiences problems getting along with others, and frequent is irritability (Tr. 32, 38, 45). Plaintiff reported experiencing panic attacks when he is in crowds (Tr. 38). Plaintiff testified that he has tried to kill himself several times (Tr. 46).

Plaintiff also testified that he is unable to work because of a back condition. Plaintiff said that he experiences unrelenting back pain at a 9 or 10 on a scale of 10 (Tr. 36). Plaintiff indicated that he has difficulty concentrating due to the pain (Tr. 36). Plaintiff testified that he could lift seven pounds if he was "lucky" and that he has "a hard time picking up [his] seven-year-old daughter" (Tr. 34).

5

## 2. Vocational expert testimony

Stella Doering, a vocational expert, testified at the request of the ALJ.

Ms. Doering classified plaintiff's past relevant work of construction laborer, semi-truck driver, and dump truck driver, as either unskilled or semi-skilled and either medium or very heavy (Tr. 52).

The ALJ posed a hypothetical question with a limitation to light work (Tr. 52). The hypothetical individual could understand, remember, and carry out simple instructions, respond appropriately to supervisors and usual work situations, and deal with changes in a routine work setting (Tr. 52-53). However, the hypothetical individual could not have co-workers in proximity (Tr. 52). While the expert excluded a return to plaintiff's past relevant work due to the exertional limitations, she opined that the hypothetical individual could perform the light-unskilled jobs, including garment sorter, night cleaner, and shirt folding machine operator (Tr. 53-54).

When the originally hypothetical question was modified to included sleeping three-to-four hours during the workday, being unable to concentrate at least one-third of the time due to pain, or being unable to work two or more days a month because of health problems, the expert testified that the identified jobs would not be available, and she was unable to identify any other jobs that such a hypothetic person could perform (Tr. 55-56).

## V. FINDINGS OF THE ALJ

In a decision dated January 25, 2011, ALJ Mary Ann Lunderman found that plaintiff had not engaged in substantial gainful activity since February 25, 2009, the alleged disability onset date (Tr. 13). The ALJ found that plaintiff's non-medically determinable impairments included sleep apnea, learning disability, and numbing in his legs and knees; that plaintiff's non-severe impairments included acid reflux disease and knee disorder; and that plaintiff's severe impairments included degenerative disc disease, arthritis, insomnia, depression, and panic

disorder (Tr. 13-14). The ALJ found that no impairment met or equaled the severity requirements of a Listing (Tr. 14-15). The ALJ found that plaintiff retained the ability to perform simple, unskilled light work with no close proximity to coworkers (Tr. 16-19). Although the ALJ found that plaintiff could not return to any of his past relevant work (Tr. 19-20), the ALJ found that plaintiff could perform other jobs that exist in significant numbers in the national economy (Tr. 20-21). Therefore, the ALJ concluded that plaintiff was not disabled (Tr. 21).

## VI. ANALYSIS

### A. MEDICAL OPINIONS

Plaintiff first argues that the ALJ erred in her evaluation of the medical opinions from treating, examining, and consultative sources.

In response, defendant argues the ALJ properly considered all medical opinions.

The record contains several opinions about plaintiff's RFC by a variety of medical sources including an examining doctor, consulting doctors, and an examining nurse.

On April 5, 2010, plaintiff underwent a consultative psychological examination at the request of the Cass County (Missouri) Family Support Division by Holly Chatain, Psy.D. Diagnoses included major depressive disorder with psychotic features, and panic disorder without agoraphobia. The then-current assessment of plaintiff's functioning (GAF) was rated at 45 (Tr. 273-75).[1]

On April 26, 2010, Dr. Lee, a medical consultant for the Cass County Family Support Division, reviewed Dr. Chatain's examination and the medical records from plaintiff's family

---

[1] A GAF score between 41 and 50 means serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). See American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR)* 34 (4th ed. 2000).

7

physician, and concluded that plaintiff was eligible for "MHADB/NC/SP/WHA"[2] (Tr. 320-21). Nothing in the record suggests that this doctor was an examining or treating physician.

On May 3, 2010, Susan Rosamond, M.D., a Missouri Disability Determination Service (DDS) medical consultant, concluded that plaintiff retained the ability to perform a wide range of light work (Tr. 310-16). Dr. Rosamond was not a treating or examining doctor.

On May 12, 2010, Martin Isenberg, Ph.D., a DDS psychological consultant, opined that plaintiff has no medically determinable mental impairment (Tr. 326-36). Dr. Isenberg was not a treating or examining doctor.

On June 9, 2010, plaintiff underwent a psychiatric evaluation by Elaine Boyd, APN/MSN, at Pathways Community Behavioral Health. The nurse's diagnosis for plaintiff was bipolar affective disorder, most recent episode manic. Plaintiff's GAF was rated at 45 (Tr. 339-43). The nurse conducted the examination on referral "by lawyer for evaluation due to disability appeal." However, the nurse recommended that plaintiff's Elavil dosage be decreased and that Tegretol be added; and she discussed the risks/benefits/side effects/alternatives to the Tegretol (Tr. 339-40). Plaintiff submitted additional records reflecting a subsequent and ongoing relationship with the nurse and Pathways (Tr. 358-65, 366), however at the time the nurse saw plaintiff, there was no such relationship. For the purposes of this appeal, I find that the nurse was an examining, not a treating source; furthermore, the nurse was not a doctor or licensed psychologist and therefore she does not qualify as an acceptable medical source.

On June 10, 2010, Casey Prough, M.D., reviewed plaintiff's chart with the nurse (Elaine Boyd) and agreed with her plan for plaintiff's care. The doctor did not examine plaintiff. The doctor did not express any opinion about the severity of plaintiff's emotional conditions or the impact of those conditions might have on plaintiff's ability to work (Tr. 345). Based on the

---

[2] I have no idea what this means although I suspect it has something to do with Medicaid.

above, the doctor was not plaintiff's treating doctor, examining, or consulting doctor at that time.

Summarizing the record: (1) Dr. Chatain was an examining physician; (2) Ms. Boyd was an examining nurse; (3) Drs. Lee, Rosamond, and Isenberg were non-examining/non-treating consultants; (4) Dr. Prough provided no medical opinions; and (5) Samuel Brewster, M.D., plaintiff's family physician, expressed no opinion about plaintiff's RFC, his ability to work, or his alleged disability.

Medical source statements are medical opinions submitted by acceptable medical sources, including treating sources and consultative examiners, describing what an individual can do despite a severe impairment, specifically an individual's physical or mental abilities to perform work-related activities on a sustained basis. Social Security Ruling (SSR) 96-5; see 20 C.F.R. §404.1513(a) (defining "acceptable medical source"). Generally, the opinions of an examining psychologist or physician should be given greater weight than the opinions of a source who has not examined the individual. Shontos v. Barnhart, 328 F.3d 418, 425 (8th Cir. 2003).

Although opinions of other governmental agencies as to whether an individual is disabled must be considered, they are not binding on an ALJ. Cruze v. Chater, 85 F.3d 1320, 1325 (8th Cir. 1996) (whether a claimant is disabled under state law is not binding on the Commissioner of Social Security).

On appeal, plaintiff argues that the ALJ gave greater weight to the opinions of the non-examining/non-treating DDS consultants over the opinions of treating and examining sources. However, none of the referenced providers was a treating physician whose opinions are entitled to controlling weight.

An ALJ's failure to cite an opinion does not necessarily mean that he or she did not consider it. Wildman v. Astrue, 596 F.3d 959, 966 (8th Cir. 2010). Here, although the ALJ did not cite Dr. Lee's opinion, the doctor based his opinion on Dr. Chatain's opinion, which the ALJ considered (Tr. 19). The ALJ's finding that Dr. Chatain's opinion was inconsistent with the record as a whole, implicates Dr. Lee's opinion as well. Although Dr. Lee found plaintiff eligibility for "MHADB/NC/SP/WHA," the record is silent on what this determination means or the underlying criteria the doctor employed to make his determination.

Plaintiff also argues that Dr. Chatain's GAF score of 45 for plaintiff shows that he is unable to work, pointing out that the score matches those assigned by Dr. Lee and Ms. Boyd. However, Dr. Lee did not examine plaintiff, and his GAF rating appears to have been based on Dr. Chatain's evaluation - the only mental health source cited by Dr. Lee (Tr. 321). This hardly amounts to confirmation of functional capacity. Furthermore, Ms. Boyd's assignment of a 45 GAF score to plaintiff was given after only one evaluation had been performed on plaintiff (Tr. 340). The record shows no psychiatric hospitalizations, either before or after Dr. Chatain's and Ms. Boyd's examinations; and plaintiff received no care from a mental health provider prior to June 2010 - 16 months after the alleged disability onset date.

GAF scores can include many factors unrelated to Social Security Administration disability. Therefore, the Commissioner has declined to endorse the GAF scale for "use in the Social Security and SSI disability programs," and has indicated that GAF scores have no "direct correlation to the severity requirements of the mental disorders listings." See 65 Fed. Reg. 50746, 50764-65, 2000 WL 1173632 (August 21, 2000). GAF scores assess more than just occupational functioning. See American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR)* 34 (4th ed. 2000). For example, "in situations where the individual's symptom severity and level of functioning are discordant, the final GAF rating

always reflects the worse of the two." See id. at 33. Based on this rating system, an individual might have no impairment in occupational functioning at all, but still receive a GAF score between 41 and 50 due to "serious symptoms," such as "suicidal ideation." See id. at 33-34 (similarly noting that "the GAF rating for an individual who is a significant danger to self but is otherwise functioning well would be below 20"). The record here does not show "a *lengthy* history of GAF scores," as discussed in Pate-Fires v. Astrue, 564 F.3d 935 (8th Cir. 2009). See Jones v. Astrue, 619 F.3d 963, 974 n.4 (8th Cir. 2010).

Based on the above analysis, the ALJ properly found that the GAF scores of 45 did not support a finding of extreme mental limitations.

The ALJ gave little weight to Dr. Chatain's opinion because the doctor met with plaintiff only once and his opinion was inconsistent with the record as a whole (Tr. 19). Goff v. Barnhart, 421 F.3d 785, 790-791 (8th Cir. 2005) ("[A]n appropriate finding of inconsistency with other evidence alone is sufficient to discount the opinion.").

Although Dr. Chatain diagnosed plaintiff with recurrent major depressive disorder with psychotic features, the record fails to support consistent complaints of hallucinations or other types of psychotic symptoms by plaintiff. While plaintiff reported a history of hallucinations to Dr. Chatain, the doctor noted that plaintiff did not exhibit "bizarre behaviors or indications of hallucinations and/or delusions" during the examination (Tr. 275). Furthermore, plaintiff did not report hallucinations or psychotic symptoms to his treatment providers (Dr. Brewster or Ms. Boyd), and specifically denied hallucinations during Ms. Boyd's examination (Tr. 340).

The ALJ similarly gave little weight to the opinions of Ms. Boyd because she was not "acceptable medical source." The ALJ may properly give the opinion of an acceptable medical

11

source more weight than the opinion of a non-acceptable medical source. See Cronkhite v. Sullivan, 935 F.2d 133, 134 (8th Cir. 1991); SSR 06-03p.

Although Ms. Boyd assigned plaintiff a GAF score of 45, she never gave an opinion that included specific mental limitations; instead, indicated that she would need to "monitor medication compliance and ongoing treatment before recommendations can be made regarding ability to work" (Tr. 340). Furthermore, Ms. Boyd arrived at her evaluation after only one examination and without the benefit of any other medical records. The ALJ noted that Ms. Boyd's opinion was inconsistent with the record as a whole, and this factor was sufficient to assign the opinion little weight (Tr. 19). The ALJ "may reject the opinion of any medical expert where it is inconsistent with the record as a whole." See Estes v. Barnhart, 275 F. 3d 722, 725 (8th Cir. 2002).

Plaintiff argues that because the ALJ found that Dr. Chatain's opinion did not contain specific limitations, the judge was required to contact Dr. Chatain to obtain an opinion with specific limitations. Dr. Chatain opined that plaintiff's "psychological functioning [was] impaired due to depression and anxiety" (Tr. 275). The ALJ agreed and found that plaintiff mentally impaired, found that plaintiff had severe depression and panic disorder, and assessed plaintiff's mental limitations flowing from those impairments. The ALJ noted that Dr. Chatain did not assess any specific mental limitations, and therefore the evaluation was of "limited value." Plaintiff carried the burden of proof at the agency level; therefore the ALJ was not required to contact Dr. Chatain for specific limitations.

Plaintiff also argues that the ALJ contradicted herself by giving significant weight to Dr. Isenberg's opinion finding plaintiff had no medically determinable mental impairment and then finding that plaintiff had severe mental impairments. However, the ALJ stated that she gave significant weight to Dr. Isenberg's opinion in the context of whether plaintiff had a medically

12

determinable *learning* disability. The ALJ clearly rejected the DDS psychological consultant's opinion when she found that plaintiff had severe depression and panic disorder. While the ALJ could have articulated her opinion more clearly, this is not fatal to her decision. See Strongson v. Barnhart, 361 F.3d 1066, 1072 (8th Cir. 2004) ("We will not set aside an administrative finding based on an 'arguable deficiency in opinion-writing technique' when it is unlikely it affected the outcome.") (quoting Brown v. Chater, 87 F.3d 963, 966 (8th Cir. 1996)).

An ALJ " 'is not required to rely entirely on a particular physician's opinion or choose between the opinions [of] any of the claimant's physicians.'" Martise v. Astrue, 641 F.3d 909, 927 (8th Cir. 2011) (quoting Schmidt v. Astrue, 496 F.3d 833, 845 (7th Cir. 2007)).

The Eight Circuit has acknowledged that a plethora of opinions, "admittedly send mixed signals about the significance of a claimant's daily activities in evaluating claims of disabling pain" Clevenger v. Soc. Sec. Admin., 567 F.3d. 971, 976 (8th Cir. 2009); and that, for example, "[t]he ability to perform sporadic light activities does not mean that the claimant is able to perform full time competitive work." Ross v. Apfel, 218 F.3d 844, 849 (8th Cir. 2000) (citing Burress v. Apfel, 141 F.3d 875, 881 (8th Cir. 1998). Nevertheless, a claimant's activities should be considered by the ALJ, and a reviewing court should evaluate the ALJ's credibility determination, based in part on daily activities, under the substantial evidence standard. McDade v. Astrue, 720 F.3d 934, 998 (8th Cir. 2013).

In summary, I find the ALJ properly evaluated the opinions of the medial sources.

.B. *RESIDUAL FUNCTIONAL CAPACITY ASSESSMENT*

Plaintiff's next argument is that the ALJ's RFC assessment is not supported by substantial evidence.

Defendant responds by citing the discussion by the ALJ as to why she found some impairments not medically determinable, some impairments non-severe, and other impairments severe. Defendant also points to the ALJ's discussion of the medical evidence, and cites the ALJ's consideration of plaintiff's activities of daily living and his treatment modalities. Finally, defendant argues that when taken as a whole, the ALJ's decision provided sufficient support for her RFC determination.

The Eighth Circuit has observed that an ALJ "must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations." McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000) (citation omitted); 20 C.F.R. §§ 404.1545 and 416.945; SSR 96-8p. Although formulation of the RFC is part of the medical portion of disability adjudication, it is not based only on "medical" evidence but, instead, on all the relevant and credible evidence in the record. McKinney, 228 F.3d at 863. Assessing a claimant's RFC is not solely a "medical question." Pearsall v. Massanari, 274 F.3d 1211, 1217-18 (8th Cir. 2001). The ALJ makes the final determination of a claimant's RFC. Roberts v. Apfel, 222 F.3d 466, 469 (8th Cir. 2000) (citing Anderson v. Shalala, 51 F.3d 777, 779 (8th Cir. 1995)). "It is the claimant's burden, and not the Social Security Commissioner's burden, to prove the claimant's RFC." Pearsall, 274 F.3d at 1217 (citing Anderson, 51 F.3d at 779).

Plaintiff argues that the ALJ should have ordered consultative examinations and obtained medical opinions. However, the ALJ considered all of the objective evidence, including the opinions of Dr. Rosamond and Dr. Isenberg, plus the information contained within the plaintiff's treatment records. Although the ALJ gave little weight to the opinions of Dr. Chatain and Ms.

Boyd, this does not mean that the judge did not consider the objective medical evidence elicited during their consultative examinations.

The ALJ mentioned plaintiff's obtaining a commercial driver's license and working as semi-truck driver. The ALJ reviewed the record and observed that plaintiff was never diagnosed with a learning disability. The DDS psychological consultant also noted that there was "no formal data to verify" whether plaintiff had a learning disability (Tr. 336), and no mental health treatment note suggests that plaintiff had a learning disability. The ALJ discussed plaintiff's activities of daily living and treatment modalities.

In short, there was more than enough evidence in the record to decide plaintiff's claim. Tellez v. Barnhart, 403 F.3d 953, 956-57 (8th Cir. 2005). The ALJ was not required to seek additional medical opinions under such circumstances. McCoy v. Astrue, 648 F.3d 605, 612 (8th Cir. 2011) (noting that the duty to develop the record "is not never-ending and an ALJ is not required to disprove every possible impairment"). I find substantial evidence on the record supports the ALJ's RFC determination.

### C. STEP FIVE

Finally, plaintiff argues that the ALJ failed to prove that plaintiff retains the RFC to do other kinds of work and that the other work exists in significant numbers in the national economy. Primarily, plaintiff contends that he is unable to perform the jobs identified by the vocational expert at the December 10, 2010 hearing.

Defendant responds that the ALJ sustained her burden at step five in the sequential evaluation and the jobs identified by the vocational expert are consistent with the hypothetical question.

The burden of production shifts to the Commissioner at step five to produce vocational

evidence of other work claimant can perform. However, the Commissioner is not required at step five to reestablish or prove the RFC formulated at step four. Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."); Charles v. Barnhart, 375 F.3d 777, 782 n.5 (8th Cir. 2004).

Plaintiff specifically argues that the ALJ failed to consider his limited education and reading deficits when finding that he could perform the jobs of garment sorter, night cleaner, and shirt folding machine operator. However, the ALJ noted that plaintiff had a limited education, having completed the 10th grade (Tr. 20, 30).

The regulations provide that SSA generally considers "a 7th grade through the 11th grade of formal education" a "limited education." 20 C.F.R. §§ 404.1564(b)(3) and 416.964(b)(3). The ALJ relied on this limited education in finding that she should use Grid rule 202.18 as the framework for her analysis (Tr. 20). See 20 C.F.R. § 404, Subpt. P, App. 2

Acknowledging that plaintiff retains a RFC for less than a full range of light work, the ALJ took evidence from a vocational expert. When posed with the ALJ's RFC findings in a hypothetical question that also noted plaintiff's age, past work experience, and a limited education, the vocational expert responded that such a person could perform the light, unskilled jobs of garment sorter, night cleaner, and shirt folding machine operator (Tr. 20, 52-54). I find no argument by plaintiff that expert's response was inconsistent with the proffered hypothetical. The vocational expert's testimony that plaintiff could perform other work constitutes substantial evidence supporting the Commissioner's decision. Gragg v. Astrue, 615 F.3d 932, 941 (8th Cir. 2010).

Plaintiff argues that jobs the expert identified require reading, reasoning, and math levels beyond plaintiff capabilities, e.g., his third grade reading level and de minimus instruction in

math. Although plaintiff makes these assertions, the evidence submitted at the hearing tends to contradict the assertions. For example, the record includes evidence from the Springfield (Missouri) Public Schools submitted by plaintiff (Tr. 155-66), which reflects that plaintiff received a "B" in the first semester and an "A-" in the second semester of the 8th grade in "Math (SE)," a "B" in the first semester and an "A-" in the second semester of the 8th grade in "Reading (SE)," and "B" in the first semester and a "B-" in the second semester of the 8th grade in "English (SE)" (Tr. 163). As noted by the ALJ, plaintiff earned his commercial driver's license and worked for several years as a semi-truck driver, a job classified by the expert as semi-skilled.

The ALJ did not identify any medically determinable impairment resulting in limitations related to plaintiff's reading or math skills. The ALJ found that plaintiff's alleged learning disorder was not medically determinable (Tr. 13). Accordingly, the ALJ did not include any limitations in the RFC or hypothetical question related to the disorder. See SSR 96-8p (noting that the ALJ "must consider only limitations and restrictions attributable to medically determinable impairments" when assessing the RFC).

The vocational expert identified jobs based on a hypothetical question that properly excluded limitations related to a learning disability, but included plaintiff's characteristics and limitations (Tr. 52-54). The vocational expert, therefore, considered plaintiff's educational background in identifying relevant jobs (Tr. 53).

I find substantial evidence supports the ALJ's finding that plaintiff could perform other work existing in the national economy.

## VII. CONCLUSIONS

Based on all of the above, I find that the substantial evidence in the record as a whole supports the ALJ's decision finding plaintiff not disabled. Therefore, it is

ORDERED that plaintiff's motion for summary judgment is denied. It is further

ORDERED that the decision of the Commissioner is affirmed.

                                                  **/s/ Robert E. Larsen**
                                                  ROBERT E. LARSEN
                                                  United States Magistrate Judge

February 12, 2014
Kansas City, Missouri